### STATE OF CONNECTICUT *v.* PEARLIE ALFORD
### (11826)

DUPONT, C. J., and SPEAR and HENNESSY, Js.

Argued November 28, 1994—decision released March 14, 1995

*William Holden,* public defender, and *Auden Grogins,* special public defender, with whom, on the brief were *Leanne Costa* and *Karen A. McCormack,* certified legal interns, for the appellant (defendant).

*Donald A. Browne,* state's attorney, for the appellee (state).

SPEAR, J. The defendant was charged with two counts of manslaughter in the first degree in violation of General Statutes § 53a-55 (a),[1] two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (3)[2] and two counts of risk of injury to a child in violation of General Statutes § 53-21.[3] She appeals from a judgment of conviction of two of these counts, assault in the first degree and risk of injury to a child. On appeal, the defendant claims that the trial court improperly (1) denied her motions for judgment of acquittal, (2) admitted certain prejudicial photographs into evidence, (3) commented on the evidence, and (4) admitted evidence of consciousness of guilt and instructed the jury thereon.[4] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Brenda Hart, a two year old, went to live with the defendant, her godmother, in the summer of 1989. At that time, Brenda was in good physical condition except for a ringworm condition, a slight cut on her lip and a few scratches on one of her legs. In the spring of 1989, Brenda's appearance was normal and she did

[1] General Statutes § 53a-55 (a) provides in pertinent part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person . . . or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[3] General Statutes § 53-21 provides in pertinent part: "Any person who wilfully or unlawfully . . .' does any act likely to impair the health or morals of [any child under the age of sixteen years], shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[4] The defendant's claim that the trial court's treatment of defense counsel violated the defendant's right to a fair trial was withdrawn at oral argument.

not have any of the visible injuries later depicted in postmortem photographs. The defendant frequently screamed at, beat and punched Brenda. Incidents of physical abuse included beating Brenda on her legs, back and arms with a belt, punching her in the mouth, striking her with a coat hanger and a belt, pushing her down with sufficient force to cause her to lose a tooth, striking her with a key chain strap with the keys attached and kicking her in the buttocks.

Brenda was admitted to Bridgeport Hospital on December 15, 1989, in an unconscious condition. She had multiple abrasions, lacerations and bruises on her face, head and neck, a black eye, a missing tooth and areas of head swelling. Brenda had suffered a subdural hematoma and a fracture of the lower jaw, both of which had occurred within the previous two weeks and were consistent with having been caused by trauma. She also was bleeding from her nose and mouth, had lumps on her head and had loop shaped marks over her entire body. Brenda died on December 22, 1989, and the autopsy determined that four upper incisor teeth were missing as a result of blunt impact sustained at different times within three months of her death. Other injuries were noted, including two separate hemorrhages on the interior of the scalp that were less than one month old and had apparently been caused by blunt instruments. Brenda's death was caused by numerous cerebral injuries that were the result of a significant number of blunt impacts to the head and possible shaking, which impaired the functioning of the brain.

## I

The defendant claims that the evidence was insufficient to convict her of either assault in the first degree in violation of § 53a-59 (a)(3) or risk of injury to a child in violation of § 53-21. "We review a claim of insufficiency of the evidence in accordance with a well estab-

lished two part test. We first construe the evidence presented at trial in a manner favorable to sustaining the verdict, and then determine whether the jury could reasonably have found, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . The probative force of the evidence is not diminished if it consists of circumstantial, rather than direct, evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Sauris*, 227 Conn. 389, 395–96, 631 A.2d 238 (1993); *State* v. *Ogrinc*, 29 Conn. App. 694, 697, 617 A.2d 924 (1992).

In support of her motions for judgment of acquittal, the defendant relied on a detailed review of the evidence presented by the defense and the claimed impeachment of certain state's witnesses. It is not necessary for us to review each evidentiary dispute pointed out by the defendant. Suffice it to say that at trial the issues were hotly contested and there was conflicting testimony from expert witnesses. It is axiomatic, however, that resolution of such disputes lies within the province of the jury. Our standard of review of guilty verdicts "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." (Internal quotation marks omitted.) *State* v. *Boykin*, 27 Conn. App. 558, 564, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

The jury resolved disputes in the evidence in favor of the prosecution as to the charges on which the

defendant was convicted.[5] "[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) Id., 563. "We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 145, 79 L. Ed. 2d 772 (1984).

The jury was presented evidence that the defendant struck and beat the two year old victim on numerous occasions. It also heard expert testimony that the child's injuries were consistent with the trauma inflicted on her during the time that she was in the care and custody of the defendant. Although the defendant concedes that the child's injuries were very serious, she vigorously asserts that those injuries were sustained prior to the child's coming to live with her. The jury, however, was entitled to believe the evidence offered by the state that the child was in good physical condition except for a ringworm condition, a slight cut on her lip and a few scratches on one of her legs at the time that she went to live with the defendant.

---

[5] Not all of the conflicts were resolved in favor of the state; the defendant was acquitted of the charges of manslaughter in the first degree in violation of § 53a-55 (a) (1) and (3), assault in the first degree in violation of § 53a-59 (a) (3) and a second count of risk of injury to a child in violation of § 53-21.

Having reviewed all of the evidence, we cannot conclude that the trial court abused its discretion in refusing to grant the defendant's motions for judgment of acquittal as to assault in the first degree and risk of injury to a child.

## II

The defendant asserts that the trial court abused its discretion in admitting three photographs depicting (1) a closeup of the inside surface of the child's scalp, (2) a closeup of the top surface of the child's brain, and (3) a closeup of the top portion of the child's skull. She claims that the prejudicial effect of these gruesome and graphic photographs outweighed their probative value.

"[P]hotographic evidence is admissible where the photograph has a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. . . . There is no requirement in this state that a potentially inflammatory photograph be essential to the state's case in order for it to be admissible; rather, the test for determining the admissibility of the challenged evidence is relevancy and not necessity. . . . Even if a photograph has the potential to prejudice the jury, it may be admitted if, in the court's discretion, its probative value outweighs its possible prejudicial effects. . . . The trial court has wide discretion in balancing a photograph's potential prejudice against its probative value." (Citations omitted; internal quotation marks omitted.) *State* v. *Doehrer*, 200 Conn. 642, 649, 513 A.2d 58 (1986); *State* v. *Scuilla*, 26 Conn. App. 165, 170–71, 599 A.2d 741 (1991), cert. denied, 221 Conn. 908, 600 A.2d 1362 (1992).

The photographs were relevant to establishing the element of serious physical injury necessary to prove assault in the first degree in violation of § 53a-59, as well as manslaughter in violation of § 53a-55 (a) (1) and (3), which required the state to prove the cause of death.

"Because the prosecution has the burden of establishing guilt beyond a reasonable doubt, [it] is not to be denied the right to prove every essential element of the crime by the most convincing evidence it is able to produce." (Internal quotation marks omitted.) *State* v. *Scuilla*, supra, 26 Conn. App. 171.

We will not disturb the trial court's finding that the probative value of the photographs outweighs their prejudicial effect unless the trial court has clearly abused its discretion. See *State* v. *King*, 216 Conn. 585, 603, 583 A.2d 896 (1990). We find no such abuse of discretion here.

### III

The defendant claims that the trial court highlighted the state's evidence in its comments to the jury "while not affording [the defendant] equal time." She asserts that these comments deprived the defendant of her constitutional right to a fair trial. The defendant concedes that no objection was raised in the trial court to its marshaling of the evidence. She seeks review, however, pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[6] We will not review the claim because the first prong of *Golding* has not been met.

The defendant failed to conform to Practice Book § 4065 (d) (2)[7] and failed to file a transcript of the jury

[6] *Golding* states: "[W]e hold that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

[7] Practice Book § 4065 (d) (2) provides in pertinent part: "When error is claimed in the charge to the jury, the brief or appendix shall include a verbatim statement of all relevant portions of the charge and all relevant exceptions to the charge. . . ."

■■■■■■

instructions. The record is not adequate to review the alleged claim of error.

## IV

The defendant makes a twofold claim with respect to the consciousness of guilt evidence. She claims that the trial court improperly admitted such evidence and improperly instructed the jury with respect to that evidence.

At trial, the state's attorney asked the following question of Olivia Bell, a Bridgeport police officer: "As part of a conversation that you had with [the defendant] at the Bridgeport Hospital on the date of December 15, 1989, did you ask her if she hit Brenda Hart?" Bell responded: "Yes, I did." The state's attorney then asked: "And what did she answer?" Bell responded: "She said that she does not physically discipline her children. She said no. She doesn't physically discipline her children." The trial court instructed the jury that it could use this statement from the defendant as evidence of her consciousness of guilt.

There was no objection to the questions at trial and the defendant made no motion to strike the testimony. In addition, the defendant did not comply with Practice Book § 4065 (d) (2)[8] by failing to include a verbatim statement of all relevant portions of the charge and all relevant exceptions to the charge in either her brief or appendix.

The burden of providing an adequate record for review rests on the appellant. Practice Book § 4061; *State* v. *Barnes*, 33 Conn. App. 603, 612, 637 A.2d 398 (1994); *State* v. *James L.*, 26 Conn. App. 81, 84, 598 A.2d 663 (1991). We will not review this issue because it was not properly preserved.[9]

---

[8] See footnote 7.

[9] The defendant did not seek review on a claim of plain error or pursuant to *State* v. *Golding*, supra, 213 Conn. 233.

The judgment is affirmed.

In this opinion the other judges concurred.